HAEMONETICS CORPORATION *vs.* BROPHY & PHILLIPS
COMPANY, INC., & another.[1]

Norfolk.    October 21, 1986. — December 16, 1986.

Present: DREBEN, CUTTER, & FINE, JJ.

*Insurance*, Subrogation, Waiver, "All risk" policy. *Contract*, Construction contract, Construction of contract. *Subrogation*.

In an action by the owner of a building against a contractor and a subcontractor to recover for damage to the building resulting from a fire while the work in question, construction of a mezzanine, was in progress, summary judgments were properly entered for the defendants, where the contract, executed on the 1977 edition of the standard form of the American Institute of Architects, included provisions that the "Owner shall purchase and maintain property insurance upon the entire Work at the site" and that the "Owner and Contractor waive all rights against (1) each other and the Subcontractors . . . for damages caused by fire . . . to the extent covered by insurance obtained pursuant to" the relevant provisions of the contract, and where the owner's all risk insurance policy contained a clause specifically providing: "Subrogation — this insurance shall not be invalidated should the Insured waive in writing prior to a loss any or all right of recovery against any party for loss occurring to the property described herein." [255-258]

CIVIL ACTION commenced in the Superior Court Department on July 12, 1983.

Motions for summary judgment were heard by *George N. Hurd, Jr.*, J.

*George F. Hurley* for Haemonetics Corporation.
*Mark E. Cohen* for A & C Steel Erectors, Inc.
*Robert E. Langway, Jr.*, for Brophy & Phillips Company, Inc.

FINE, J.  Haemonetics Corporation owns and occupies a building in Braintree which it uses in its business of manufac-

[1] A & C Steel Erectors, Inc.

turing and selling medical products. In 1980, Haemonetics contracted for the construction of a mezzanine in the building with Brophy & Phillips Company, Inc. (general contractor). The general contractor in turn subcontracted for the steel construction portion of the work on the project with A & C Steel Erectors, Inc. (subcontractor). While the subcontractor was engaged in electric arc welding on the project, a fire occurred on the owner's premises causing damage to its real and personal property. The owner was compensated for its loss by its "all risks" insurance carrier. The insurer, exercising its subrogation rights, presses the claims of the owner against the contractor and subcontractor. Those claims allege negligence and seek from the contractor and subcontractor a recovery based upon damage to the real and personal property and losses resulting from interference with the operation of the plaintiff's business. Each defendant, relying on certain contractual arrangements which we describe below, sought and obtained summary judgment. The memoranda and exhibits filed by the parties in support of their motions for summary judgment make it clear that the relevant facts, apart from those relating to the cause of the fire, are not in dispute. Even assuming that the fire resulted from the negligence of the contractor or the subcontractor, we rule that the owner is barred from recovering from either, and we therefore affirm the judgments.

The contract between the owner and the general contractor was for construction of a mezzanine level in the owner's building for a sum of $237,706. It was executed on the 1977 edition of the standard form contract of the American Institute of Architects (AIA) and incorporated by reference the "General Conditions of the Contract for Construction," AIA Document A201, 1976 edition. Article 11.3, in relevant part, provides as follows: "[§]11.3.1 . . . [T]he Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include 'all risk' insurance for physical loss or damage . . . . [§]11.3.6 The

Owner and Contractor waive all rights against (1) each other and the Subcontractors, Sub-subcontractors, agents and employees each of the other, . . . for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work, . . ."

At the time the contract was executed, the owner had in effect a policy with Industrial Risk Insurers of Hartford covering losses caused, among other things, by fire. The amount of insurance was in excess of $10,000,000. The policy remained in effect up to and including the date of the fire. It contained a clause which specifically provided: "Subrogation — This insurance shall not be invalidated should the Insured waive in writing prior to a loss any or all right of recovery against any party for loss occurring to the property described herein." Based upon the fire loss, the owner recovered $486,392 under this policy.

The fire damage sustained by the owner in the course of the construction for which it received the insurance proceeds was not damage to the "Work," as that word is defined in the contract between the parties.[2] Article 1, § 1.1.3, defines the "Work" to include "the completed construction required by the Contract Documents, . . . all labor necessary to produce such construction, and all materials and equipment incorporated or to be incorporated in such construction." If the damage had been to the "Work" as defined by § 1.1.3, it would be clear that the owner waived its right to recover from both the general contractor and the subcontractor. *Tokio Marine & Fire Ins. Co.* v. *Employers Ins.*, 786 F.2d 101 (2d Cir. 1986). Compare *Fortin* v. *Nebel Heating Corp.*, 12 Mass. App. Ct. 1006 (1981), decided under an earlier version of the AIA standard form construction contract in which the waiver clause applied only to the owner and the general contractor.

---

[2] Hot slag generated by one of the subcontractor's arc welding machines had fallen onto a tarpaulin strung under the construction site; the tarpaulin ignited and set off the sprinkler system; fire, smoke, and water damage resulted to the owner's equipment located under the construction area. The "Work" under the contract was the erection of a mezzanine.

The owner argues that § 11.3.1 required only that it maintain insurance on the "Work", that § 11.3.6, the waiver clause, applied only "to the extent covered by insurance obtained pursuant to . . . § 11.3," and that there was no waiver, therefore, of the owner's right to sue the contractor and the subcontractor for the loss. The owner may be on firm ground in suggesting that it could have complied with the requirements of § 11.3.1 by acquiring an insurance policy limited to protection of the "Work." On that point, however, the contractor and subcontractor contend that the phrase "the entire Work at the site" has a broader meaning than the "Work" and that § 11.3, therefore, compels the owner to provide insurance on the entire building. The contract contains no definition of the phrase, "the entire Work at the site." We need not resolve the issue of the scope of the owner's obligation to acquire insurance for the benefit of the contractor and subcontractor, however, because we think the waiver clause applies to this case regardless of the scope of that obligation. The preexisting insurance policy the owner had with Industrial Risk Insurers was the insurance the owner chose to provide to comply with § 11.3 even though that policy may have been more extensive than what was required. By the terms of § 11.3.6, the waiver of rights extends to the proceeds of any insurance provided under § 11.3.

The parties have directed us to only one case in which this issue was raised under this particular standard form construction contract, *E.C. Long, Inc.* v. *Brennan's of Atlanta, Inc.*, 148 Ga. App. 796 (1979).[3] The fire damage in that case was not to the "Work". Nevertheless, because the contract between the parties had a waiver clause identical to the one in this case, the owner was held to have waived any right to recover from the contractor to the extent the owner was reimbursed by insurance. The result we reach is consistent not only with the limited precedent, but also with the policy underlying the use of waiver

---

[3] Our own research has unearthed no other authority directly on point. But see generally Annot., 22 A.L.R. 4th 701 (1983). An alternative ground for the holding of the Georgia court in *E.C. Long, Inc.* v. *Brennan's of Atlanta, Inc.*, was that the contractor, which had an insurable interest in the property, was named in the insurance policy as a coinsured party.

of subrogation clauses in construction contracts. "A waiver of subrogation is useful in such projects because it avoids disruption and disputes among the parties to the project. It thus eliminates the need for lawsuits, and yet protects the contracting parties from loss by bringing all property damage under the all risks builder's property insurance." *Tokio Marine & Fire Ins. Co.* v. *Employers Ins.*, 786 F.2d at 104. At least where the policy provided by the owner to comply with § 11.3 covers only the structure in which the construction work is done, and there is damage to some part of that structure, the result we reach advances those goals. It has the potential for avoiding litigation not only over liability issues related to the fire or other cause of damage to the owner's property, but also over the issue whether the claimed loss is to the "Work" or not. When the insurance company issued its policy, it contained a provision making specific reference to the possibility of a waiver by the owner of its subrogation rights. The result, therefore, should come as no surprise to the insurance company, the real party in interest.

*Judgments affirmed.*