**TOWN OF SILVERTON, a Statutory Town, Plaintiff–Appellant,**

v.

**The PHOENIX HEAT SOURCE SYSTEM, INC., a Colorado corporation; Ronald W. Van Kleeck; J–M Constructors, Inc., a Colorado corporation; Nichols Electric, Inc., a Colorado corporation; Reynolds/Larson Associates, Inc., a Colorado corporation, Defendants–Appellees.**

No. 95CA1576.

Colorado Court of Appeals, Div. II.

Jan. 9, 1997.

As Modified on Denial of Rehearing May 1, 1997.

Certiorari Granted Dec. 2, 1997.

Senter, Goldfarb & Rice, L.L.C., Steven J. Dawes, Peter H. Doherty, Denver, for Plaintiff–Appellant.

White and Steele, P.C., John P. Craver, George A. Codding, III, Denver, for Defendants–Appellees The Phoenix Heat Source System, Inc. and Ronald W. Van Kleeck.

Weller Friedrich, L.L.C., Dennis J. Bartlett, Denver, for Defendant–Appellee J–M Constructors, Inc.

Susemihl, Lohman & McDermott, P.C., Gary Cowan, Colorado Springs, for Defendant–Appellee Nichols Electric, Inc.

James A. Shaner, Durango, for Defendant–Appellee Reynolds/Larson Associates, Inc.

Opinion by Judge ROTHENBERG.

In this action for damages based on negligence, breach of warranty, and products liability, plaintiff, the Town of Silverton (town), appeals the summary judgment entered in favor of defendants, Phoenix Heat Source, Inc. (Phoenix Heat); Ronald W. Van Kleeck; J–M Constructors, Inc. (J–M); Nichols Electric, Inc.; and Reynolds/Larson Associates, Inc. We affirm in part, reverse in part, and remand with directions.

In October 1990, the town contracted with J–M, as general contractor, for installation of a new roof on the town hall. Phoenix Heat was a subcontractor that designed, manufactured, and supplied an electric snow melting system installed on the roof of the town hall. Van Kleeck is a principal of Phoenix Heat and, for the purposes of this appeal, also was a subcontractor as were Reynolds/Larson Associates, Inc., and Nichols Electric, Inc.

The construction contract included a form agreement drafted in 1987 by the American Institute of Architects (AIA) called the "General Conditions of the Contract for Construction." It contained two waiver of subrogation provisions.

Paragraph 11.3.5 states in pertinent part that:

[I]f after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages caused by fire or other perils covered by this separate property insurance....

Paragraph 11.3.7 also states that:

The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants ... for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work.... A waiver of subrogation shall be effective ... whether or not the person or entity had an insurable interest in the property damaged.

Upon completion of the roofing project in May 1991, the town made its final payment to defendants.

In November 1992, the town hall was damaged in a fire. The town was insured against the loss by the Colorado Intergovernmental Risk Sharing Agency (CIRSA). After CIRSA compensated the town for the fire damage, it assigned the town all of its interests, including rights of subrogation, for benefits it had paid due to the fire.

The town then filed this action alleging that the fire had been caused by problems in the snow melting system installed by defendants. Defendants moved for summary judgment, arguing that the town had waived its right to subrogate its claim to CIRSA and, therefore, that assignment of the claim had conveyed no legal rights to the town. The town argued that the waiver provisions were inapplicable because they were limited to: (1) damages incurred during the period of construction and the fire damage in this case occurred after the project was completed; (2) damages to the work performed under the contract; and (3) damages occurring as a result of the conduct of a subcontractor and not a provider of materials.

The trial court granted summary judgment for defendants and dismissed the town's complaint.

## I.

The town contends that the trial court erred in interpreting the waiver of subrogation provision. The town argues that the waiver was limited: (1) spatially, to damages to the new roof and not to other parts of the town hall damaged by the fire, and (2) temporally, to damages occurring during the construction period. The town also asserts that the waiver of subrogation clause does not apply to its products liability and breach of warranty claims against Phoenix Heat. We agree the waiver of subrogation provision was limited spatially but reject the town's other contentions.

Summary judgment is proper under C.R.C.P. 56(c) when the pleadings, affidavits, depositions, or admissions reveal no genuine issue of material fact and establish that the moving party is entitled to judgment as a matter of law. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987).

■ The meaning of a contract is found by examining the entire instrument, not by viewing clauses or phrases in isolation. Each word should be given meaning if possible. *U.S. Fidelity & Guaranty Co. v. Budget Rent–A–Car Systems, Inc.,* 842 P.2d 208 (Colo.1992).

■ The interpretation of a written contract is a question of law and a reviewing court need not defer to a trial court's interpretation. *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371 (Colo.1990).

■ In determining the intent of contracting parties, we must give the terms of the contract their plain and ordinary meaning.

*Cache National Bank v. Lusher*, 882 P.2d 952 (Colo.1994).

■ A trial court may not look beyond the plain words of a contract to interpret the parties' underlying intent unless the contract terms are ambiguous or are used in a special or technical sense not defined in the contract. *KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769 (Colo.1985).

### A. Spatial Scope of Waiver

■ The town first contends that the scope of the subrogation waiver in paragraph 11.3.7 is limited to the value of "the Work," *i.e.*, the new roof, and is inapplicable to other parts of the town hall that were damaged in the fire. We agree.

Paragraph 11.3.7 waives the subrogation rights of both the property owner and the contractor for damages caused by fire to the extent covered by the owner's property insurance obtained pursuant to paragraph 11.3 or other property insurance applicable to the work.

The agreement defines "Work" as "the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations." In another provision, it specifies the "Work of the Contract" as the reroofing of the town hall.

The waiver of subrogation provisions placed defendants essentially in the position of co-insureds on the town's property insurance policy only with respect to damages to the work. *See Public Employees Mutual Insurance Co. v. Sellen Construction Co.*, 48 Wash.App. 792, 740 P.2d 913 (1987);*c.f. 1700 Lincoln Limited v. Denver Marble & Tile Co.*, 741 P.2d 1270 (Colo.App. 1987)(insurer may not subrogate against its insured). In the event of fire loss to the work, the parties agreed to exculpate each other from liability due to such fire loss, but to look solely to the town's property insurance for recovery. *See Steamboat Development Corp. v. Bacjac Industries, Inc.*, 701 P.2d 127 (Colo.App.1985). However, nothing in the agreement shows an

intent to extend this mutual exculpation to parts of the building other than the work.

Other courts have construed the AIA General Conditions agreement form in a similar manner. For example, in *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15 (Mo.1995), the designer of a remodelled portion of a warehouse was sued after the warehouse collapsed. The designer argued that the claim was barred by a waiver of subrogation clause in a contract identical to the one at issue here. The Missouri court disagreed, and construed the waiver provision as effective only to the extent of the value of the work. *Butler v. Mitchell–Hugeback, Inc., supra. See also S.S.D.W. Co. v. Brisk Waterproofing Co., Inc.*, 76 N.Y.2d 228, 557 N.Y.S.2d 290, 556 N.E.2d 1097 (N.Y.1990) (construing 1976 version of the General Conditions form agreement); *Public Employees Mutual Insurance Co. v. Sellen Construction Co., supra* (same).

Reading the provisions of the agreement together, we agree with the conclusion reached in *Butler* and other similar cases. *But see Lloyd's Underwriters v. Craig & Rush, Inc.*, 26 Cal.App.4th 1194, 32 Cal. Rptr.2d 144 (1994); *Haemonetics Corp. v. Brophy & Phillips Co.*, 23 Mass.App.Ct. 254, 501 N.E.2d 524 (1986); *Chadwick v. CSI, Ltd.*, 137 N.H. 515, 629 A.2d 820 (1993).

We therefore hold that the scope of the waiver of subrogation is limited to the value of the work performed under the contract, *i.e.*, the new roof, and is inapplicable to other parts of the town hall damaged in the fire.

### B. Temporal Scope of Waiver

■ However, we disagree with the town's next contention that the trial court erred in determining the waiver of subrogation clause applied only to damage occurring after construction and final payment.

As quoted above, the waiver provision in paragraph 11.3.7 extends to perils covered by property insurance obtained pursuant to the agreement and also to "other property insurance applicable to the Work. . . ."

The first type of insurance referred to in this provision is property insurance an owner is required to procure under paragraph

11.3.1. Unless the parties agree otherwise, this applies to "the entire Work at the site" until final payment or until no one other than the owner has an insurable interest in the property, whichever is earlier.

As to the second type of insurance referred to in paragraph 11.3.7, the town contends the quoted contract language refers only to "builder's risk" insurance which normally terminates when construction is complete. We disagree.

The waiver provision in paragraph 11.3.7 contains no reference to "builder's risk" insurance, nor does it reflect any intent to limit the waiver of subrogation rights to damages occurring before final payment. We therefore hold that the phrase, "other property insurance applicable to the Work," refers to any property insurance applicable to the work other than that procured under paragraph 11.3.1. *See Blue Cross v. McDevitt & Street Co.,* 234 Va. 191, 360 S.E.2d 825 (1987).

As quoted above, the waiver provision in paragraph 11.3.7 further extends to persons or entities whether or not such persons or entities had an insurable interest in the damaged property. Thus, the fact that a contractor had finished its work and had no remaining insurable interest in the property did not terminate the waiver of subrogation rights.

Other provisions in the General Conditions agreement also support this construction.

The agreement broadly defines "the Work" as "the construction and services required by the Contract Documents, *whether completed or partially completed,* and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations." (emphasis added) As previously noted, paragraph 11.3.5 also provides for a waiver of subrogation rights after final payment.

Here, the town had property insurance on the town hall from the beginning of construction until the fire occurred in November 1992. The town does not claim it obtained this insurance to comply with the agreement, nor does it dispute that this insurance was "other property insurance applicable to the Work."

Because property insurance applicable to the work, other than that obtained pursuant to paragraph 11.3.1, may remain in effect after the final completion date, so too may a waiver of subrogation rights under paragraph 11.3.7 remain in effect. Thus, we conclude that the waiver of subrogation clause barred subrogation for insured losses to the work occurring after the final completion date and the date final payment was made. *See Blue Cross v. McDevitt & Street Co., supra.*

Cases cited by the town are distinguishable either because they rely on language from an earlier version of the AIA General Conditions form which differs from the contract language here, *see Automobile Insurance Co. v. United H.R.B. General Contractors, Inc.,* 876 S.W.2d 791 (Mo.App.1994) (relying on provision of the 1976 AIA form), or they involved situations in which damage had occurred before completion of the contract. *See Village of Rosemont v. Lentin Lumber Co.,* 144 Ill.App.3d 651, 98 Ill.Dec. 470, 494 N.E.2d 592 (1986); *State v. U.S. Fidelity & Guaranty Co.,* 577 So.2d 1037 (La.App.1991); *Chadwick v. CSI, Ltd., supra.*

### C. Products Liability and Breach of Warranty

■ Finally, the town contends that the trial court erred by applying the waiver of subrogation to its products liability claim and breach of warranty claim against defendant Phoenix Heat. We disagree.

The waiver of subrogation provision specifically applies to claims against contractors and subcontractors. The agreement does not limit the types of claims subject to a waiver under the provisions at issue.

Phoenix Heat was a subcontractor and, as part of its work on the site, it provided the snow melting machinery used in the finished product. Thus, the trial court correctly ruled that the waiver applied. *See Village of Rosemont v. Lentin Lumber Co., supra.*

In summary, we hold that: (1) the waiver of subrogation clause was inapplicable to damages to parts of the town hall other than the work performed under the contract; (2)

the waiver of subrogation remained in effect with respect to the work after construction was complete and final payment had been made; and (3) the waiver of subrogation was valid as to the products liability and breach of warranty claims against Phoenix Heat.

The summary judgment is affirmed with respect to those portions of the town's claims for damages to "the Work" under the contract. It is reversed as to those portions of the town's claims for damages to the remainder of the town hall, and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

CRISWELL and KAPELKE, JJ., concur.