**LUMBERMENS MUTUAL CASUALTY CO. a/s/o Vitasoy USA, Inc., Plaintiff,**

v.

**GRINNELL CORP., Scott Equipment Co., Rockwell Automation, Inc. and J.M. Coull, Inc., Defendants.**

**Civil Action No. 05–12353–NMG.**

United States District Court, D. Massachusetts.

Feb. 27, 2007.

---

Kip J. Adams Pierce, Davis & Perritano, LLP, William F. Burke, Colleen M. Nevin, Adler, Pollock & Sheehan PC, Boston, MA, for Defendant, Scott Equipment Company.

Kathleen C. Tulloh Brink, Steven C. Kennedy, Law Offices of Jaqueline L. Allen, Boston, MA, for Defendant, J.M. Coull, Inc.

Richard E. Cavanaugh, Michael W. Gallagher, Beth B. O'Donnell, Gallagher & Cavanaugh, LLP, Lowell, MA, for Defendant, Rockwell Automation, Inc.

Mark J. Hoover, Campbell, Campbell, Edwards & Conroy, PC, Boston, MA, Angela Marie Splittgerber, J. Patrick Sullivan, Shook, Hardy & Bacon L.L.P., Kan-

sas City, MO, for Defendant, SimplexGrinnell LP.

Edward W. Murphy, George R. White, Jr., Morrison Mahoney LLP, Boston, MA, for Plaintiff, Lumbermans Mutual Casualty.

### MEMORANDUM & ORDER

GORTON, District Judge.

An insurer, as subrogee, brings suit against a general contractor and several subcontractors for fire damage that occurred at the insured's facility allegedly as a result of the negligent installation and inspection of certain equipment. Two of the defendants have filed motions for summary judgment and the plaintiff has countered by filing a motion to amend the complaint. Several other non-dispositive motions are also pending.

### I. *Factual Background*

Plaintiff Lumbermens Mutual Casualty Company ("Lumbermens"), as subrogee of Vitasoy USA, Inc. ("Vitasoy"), brings this suit against defendants J.M. Coull, Inc. ("Coull"), SimplexGrinnell LP, successor-in-interest to Grinnell Corporation ("Grinnell"), Scott Equipment Company ("Scott") and Rockwell Automation, Inc. ("Rockwell") to recover money it paid to Nasoya Foods, Inc. ("Nasoya") as its insurer for damages resulting from a fire. In February, 2003, Nosaya merged into Vitasoy and the insurer therefore brings this action on behalf of Vitasoy for damages sustained by Nasoya.

The dispute arises out of a construction project on which defendant Coull was the general contractor at Nasoya's soybean processing plant in Ayer, Massachusetts. Defendant Grinnell was engaged in the business of providing fire protection services, including testing and inspection of automatic sprinkler equipment and fire alarms. Defendant Scott designed, manufactured and installed processing equipment, including comprehensive drying systems, and defendant Rockwell designed and engineered power, control and information systems and services.

In or about February, 2001, Nasoya purchased a comprehensive drying system from Scott for use in the drying of okra at its processing plant. In March, 2001, Nasoya engaged Coull to be the general contractor for a construction project that would expand the processing plant to accommodate the Scott drying system and Grinnell to provide fire sprinkler and alarm testing and inspection at its plant.

Work at the Nasoya facility proceeded under a master construction contract ("the Contract") between Nasoya and Coull as general contractor. The Contract incorporates a set of general construction conditions that are memorialized in the 1997 edition of AIA Document A201–1997 ("the Conditions"). Similar versions of that contract are used throughout the construction industry. The Conditions governed the rights and responsibilities of Nasoya, Coull and any subcontractors hired by Coull to complete the project. They included a waiver of subrogation clause, as follows:

> **11.4.7. Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other . . . for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to Paragraph 11.4 or other property insurance applicable to the Work . . .

In early 2002, construction of the Nasoya addition and the Scott dryer system were completed. On October 4, 2002, a fire occurred within the Scott drying system at Nosaya's soybean plant resulting in significant property damage and the de-

struction of that system. Because of the fire, the soybean processing plant suffered significant downtime and was forced to decrease operation. Lumbermens paid Nasoya $575,298 for damages resulting from the fire and seeks to recover that amount from the defendants. Two of the defendants, Coull and Grinnell, have filed motions for summary judgment on the grounds that any such recovery is barred by the waiver of subrogation clause of the Conditions, § 11.4.7.

### A. Procedural History

Lumbermens filed a complaint against the defendants in the Massachusetts Superior Court, Middlesex County, on May 29, 2005. The case was removed to this Court on diversity grounds on November 23, 2005. A scheduling conference was held in January, 2006, and both Grinnell and Coull filed motions for summary judgment in August, 2006. The plaintiff opposes both those motions and, in September, 2006, filed a motion to amend the complaint, which is opposed by Grinnell. A hearing on those motions was held on February 14, 2007. Several other non-dispositive motions are also pending.

### II. *Legal Analysis*

#### A. Legal Standard for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

#### B. Motions for Summary Judgment

Both Grinnell and Coull move for summary judgment on the grounds that Lumbermens may not recover against them because such recovery is barred by the waiver of subrogation clause in the Conditions. Grinnell also moves for summary judgment to limit recovery under a limitation of liability clause in a separate inspection contract between it and the owner.

#### 1. Waiver of Subrogation

Massachusetts law recognizes waiver of subrogation provisions in construction contracts. *See Haemonetics Corp. v. Brophy & Phillips Co., Inc.*, 23 Mass.App.Ct. 254,

501 N.E.2d 524 (1986)(upholding waiver of subrogation clause in general construction contract which barred recovery by insurer for fire occurring during construction). In *Haemonetics,* however, the fire occurred while the construction project was ongoing, unlike the fire in the instant case which occurred after completion of the project. The waiver of subrogation clause in the Conditions applies only with respect to property insurance obtained pursuant to Paragraph 11.4 of the Conditions or other insurance "applicable to the Work." The "Work" is defined as "the construction and services required by the Contract Documents, whether completed or partially completed". Although the definition of the "Work" includes "completed" services, § 11.4.1 requires that property insurance shall be maintained "until final payment has been made" unless otherwise provided in writing in the contract documents. Under § 11.4.7, therefore, the parties waive subrogation rights only with respect to damage occurring before final payment has been made unless otherwise indicated in writing which is not the case here. *See Automobile Ins. Co. of Hartford v. United H.R.B. General Contractors, Inc.,* 876 S.W.2d 791, 795 (Mo.Ct.App.1994).

In its reply to the plaintiff's opposition to summary judgment, however, Grinnell points to another section of the Conditions, § 11.4.5, which provides that:

> ... if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance.

Nasoya bought a separate property insurance policy covering the post-construction period from Lumbermens under which the plaintiff now attempts to exercise its subrogation rights to recover its losses. According to Grinnell, however, the waiver of subrogation clause, § 11.4.7, applies equally to separate, post-construction policies by operation of § 11.4.5.

Although no court in this jurisdiction has addressed the relationship between §§ 11.4.5 and 11.4.7, other courts have examined the issue. Grinnell cites three cases in which it was held that § 11.4.5, or substantially identical language, barred post-construction claims by the property owner's insurer. *See Silverton v. Phoenix Heat Source Sys., Inc.,* 948 P.2d 9, 11–13 (Colo.Ct.App.1997); *Colonial Properties Realty Limited Partnership v. Lowder Construction Company, Inc.,* 256 Ga.App. 106, 567 S.E.2d 389, 390–91 (2002); *Midwestern Indem. Co. v. Systems Builders, Inc.,* 801 N.E.2d 661 (Ind.Ct.App.2004).

*Silverton* was the first case in that trilogy and apparently influenced subsequent courts which considered the issue. In *Silverton,* the property in question was insured at all times, before and after construction, by a state agency. *See* 948 P.2d at 11–13. The *Silverton* Court concluded that:

> Because property insurance applicable to the work, other than that obtained pursuant to paragraph 11.[4].1, may *remain* in effect after the final completion date, so too may a waiver of subrogation rights under paragraph 11.[4].7 *remain* in effect. (Emphasis added).

*Id.* at 13. The *Silverton* Court's holding reflects that, in that case, the parties agreed to extend a preexisting insurance policy and, along with it, the related waiver of subrogation rights. The same insurance policy provided coverage for the Town Hall from construction until the fire. *Silverton* is, however, distinguishable from the instant case because the parties here

did not agree to extend an existing insurance policy. Rather, the policy covering the construction period terminated on the date of the last payment and the plaintiff subsequently purchased a separate, post-construction policy. *Silverton* does not, therefore, stand for the proposition that a waiver of subrogation rights automatically extends to a separate policy purchased after final payment on the project.

On the other hand both the Georgia and Indiana Courts of Appeals have addressed the precise issue before this Court of whether the language of § 11.4.5 extends the waiver of subrogation provision, § 11.4.7, to claims arising under a post-construction insurance policy that was not in place (or specifically contemplated) at the time that the parties entered into their general construction contract. *See Colonial Properties*, 567 S.E.2d at 390–91; *Midwestern Indem. Co.*, 801 N.E.2d 661. Both Courts relied heavily on *Silverton* without exploring the distinction that the parties in that case elected to extend an existing insurance policy and that the original waiver of subrogation provision was extended along with it.

Notwithstanding the holdings of those cases, the plaintiff urges this Court to focus attention on the language of § 11.4.5, which extends the waiver of subrogation provision only "if after final payment property insurance is *to be provided* on the completed Project ..." (emphasis added). Plaintiff argues that the words "to be provided" suggest that § 11.4.5 applies only to a situation in which the parties agree, in advance, that post-construction property insurance will be provided, not to cases such as this one where the parties did not contemplate such a policy as part of the general construction Contract.

In support of its position the plaintiff cites the dissent in *Midwestern Indem. Co.*, which was decided by a two-to-one

majority. 801 N.E.2d at 675. Recognizing the factual incongruity with *Silverton*, the dissent interpreted the words "to be provided" as an express intent of future obligation. If the parties agreed, as a part of their construction contract, that post-construction coverage would be provided, then, according to the dissent, the waiver of subrogation provision would apply to the post-construction policy. If, however, the parties did not agree, as part of their contract, that a post-construction policy would be purchased, any such policy that the property owner happened to buy in the future would not precipitate the operation of § 11.4.5. *Id.* at 676–77.

■ This Court finds the logic of the dissent in *Midwestern Indem. Co.* to be compelling. A waiver of subrogation clause makes sense when property insurance is intended to cover any loss sustained during the course of construction. If subrogation rights were not waived, not only would a protracted dispute become likely but also a severe conflict of interest would exist if an insurer were permitted to recover from one of its own insureds. *Id.* at 676. Waiver of subrogation against the contractor or subcontractors is not so logical in the context of a post-construction policy, however, unless the parties had negotiated in advance a waiver of post-construction liability.

It does not follow that a general contractor and subcontractors should be released from post-construction liability under § 11.4.5 simply because the property owner chooses to purchase a post-construction insurance policy for its own benefit. That would likely result in a windfall for the general contractor and the subcontractors unless they had negotiated such a release in advance. Furthermore, if it knew that its insured had waived subrogation rights, an insurer would certainly assess a higher premium than if it retained its common

law right to subrogation. The converse, of course, is also true: if the original policy covering the construction period for which subrogation rights were waived was simply extended into the future, it is logical to extend the waivers because the premium for that policy had taken into account such waivers.

There is no evidence in this case that the parties intended or agreed to exempt the contractor and the subcontractors from post-construction liability. In fact, the evidence suggests the contrary. Following Article 16, the Contract itself provides a space for the listing of contemplated insurance and bonds other than those which are specifically required by the Conditions. Section § 11.4.1 of the Conditions provides that the owner shall maintain an insurance policy until final payment is made

> unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance.

One would expect that if the parties intended that the owner was to buy any additional insurance over and above that which is required by § 11.4.1, they would have so provided, in writing, in the space after Article 16 or somewhere else in the contract documents. Because they did not, the Court finds that the parties manifested their intent not to provide post-construction insurance nor to waive post-construction subrogation rights as to the defendants.

Coull's motion for summary judgment raises the waiver of subrogation clause as its only defense with respect to Count VIII (negligence) and Count IX (Breach of Contract). That motion will be denied. Grinnell's motion for summary judgment will be denied as to Count I (Negligence) and Count II (Breach of Contract) insofar as the latter is a claim for breach of Grinnell's subcontract with Coull. Grinnell, however,

was also party to a separate contract with the owner for inspection services which is subject to further discussion below.

### 2. Limitation of Liability

■ In Count II, the plaintiff has brought a subrogation claim for breach of contract against Grinnell based upon work that Grinnell performed for Nasoya after completion of the project under an independent sprinkler inspection contract ("the Inspection Contract"). That agreement contained a limitation of liability clause limiting any potential recovery to the value of the contract price. In its motion for summary judgment, Grinnell seeks a declaration that the plaintiff's recovery is limited by the terms of that clause which provides that

> Contractor's liability to subscriber for personal injury, death, or property damage arising from performance under this contract shall be limited to the contract price.

The plaintiff contends that the limitation of liability clause does not apply to claims arising from gross negligence but is faced with the problem that it did not plead gross negligence in its complaint. Plaintiff has, however, filed a motion to amend the complaint to add allegations of gross negligence which are addressed hereafter. The limitation of liability clause will, in any event, be enforced with respect to Count II and Grinnell's motion for summary judgment will, to that extent, be allowed.

### C. Plaintiff's Motion to Amend Complaint

The plaintiff has filed a motion to amend its complaint to add counts of gross negligence against Grinnell and Coull. Pursuant to Fed.R.Civ.P. 15(a), after a responsive pleading has been served, a complaint may not be amended without leave of the Court. The Rule, however, provides that

"leave shall be freely given when justice so requires." This is the plaintiff's first request to amend the complaint and that request was filed in September, 2006, well before the close of discovery.

■ The liberal standard for amendment becomes more stringent, however, after the opposing party files a motion for summary judgment. In that event, the plaintiff is required to provide "substantial and convincing evidence" in support of its amended claims. *Resolution Trust Corp. v. Gold,* 30 F.3d 251, 253 (1st Cir.1994). The plaintiff here did not file its motion to amend until after the defendants had filed their motions for summary judgment. In fairness, however, the defendants here filed their dispositive motions quite early in the proceedings, well before the close of discovery, so the plaintiff will not be held to as strict a standard as set forth in *Resolution Trust.*

■ The plaintiff seeks to add a claim for breach of the subcontract between the owner and Grinnell and claims of gross negligence against both Grinnell and Coull. Count II of the original complaint, which alleges breach of contract against Grinnell, is somewhat vague because it does not specify whether it involves breach of the subcontract, which is subject to the terms of the master Contract and Conditions, or breach of the separate Inspection Contract. The plaintiff's motion to amend by adding a count for breach of subcontract will be allowed because it ameliorates that confusion and, in any event, the Court has already ruled that such a claim is not barred by the waiver of subrogation clause in the master Contract.

The next issue is whether the plaintiff should be allowed to add claims for gross negligence against Grinnell and Coull. That issue would be more significant had the Court ruled that the waiver of subrogation clause barred the plaintiff from

proceeding against the defendants because it would have left the plaintiff with only a claim for the alleged gross negligence as to which, according to the plaintiff, parties may not waive liability as a matter of public policy. Legal support exists in various jurisdictions on both sides of that argument but the Court need not resolve the debate because the plaintiff's claims are not barred by the waivers of subrogation. A claim for gross negligence against Grinnell may, however, circumvent the limitation of liability clause in the separate Inspection Contract because that clause specifically releases Grinnell from negligence claims but is silent as to gross negligence. Analysis of whether the plaintiff has a colorable gross negligence claim is therefore warranted.

### 1. Gross Negligence

■ Under Massachusetts law, gross negligence is substantially and appreciably more serious than ordinary negligence. It is characterized by "the want of even scant care", although it falls short of being equivalent to a willful and intentional wrong. *Altman v. Aronson,* 231 Mass. 588, 591–92, 121 N.E. 505 (1919).

■ According to the plaintiff, Grinnell was responsible for installing a sprinkler system in the Nasoya addition and connecting the sprinkler in the dryer system to Nasoya's main system. Both Grinnell and Coull allegedly failed to connect the internal dryer sprinkler to the main sprinkler system. Grinnell is said to have subsequently compounded the error by failing to detect that the sprinkler systems were not adequately connected in the course of its performance under the Inspection Contract.

Whether the oversight of either Grinnell or Coull, if proven, rises to the level of gross negligence is a close call. In sup-

port of its claims, the plaintiff has submitted inspection reports in which Grinnell apparently failed to recognize that the sprinkler system was incorrectly installed (although such reports are difficult to interpret to the untrained eye). Grinnell's failure to discover that the subject sprinklers were not even connected is a serious omission and, if proven, may constitute gross negligence.

The plaintiff will be permitted to amend the complaint to add counts for gross negligence against Grinnell and Coull. Those defendants may file renewed motions to dismiss and/or for summary judgment on the substance of those claims, as well as the original counts, once discovery is completed.

### D. Non–Dispositive Motions

#### 1. Lumbermens' Cross-motions pursuant to Fed. R. 56(f)

In its opposition to Coull's motion for summary judgment, Lumbermens purports to bring a cross-motion pursuant to Fed.R.Civ.P. 56(f) for a continuance in order to prepare an adequate opposition to the motion for summary judgment. Lumbermens filed an identical cross-motion with respect to Grinnell in its opposition to Grinnell's motion for leave to file a reply to Lumbermens' opposition to summary judgment.

In both of its Rule 56(f) cross-motions, the plaintiff requests that the Court rule on its motion to amend the complaint to add counts for gross negligence and to allow additional discovery before ruling on the defendants' motions for summary judgment. At this stage in the proceedings, the motions will be denied as moot because the Court has independently evaluated the motions for summary judgment and the motion to amend in light of the evidence and memoranda heretofore submitted by the parties.

#### 2. Plaintiff's Motions for Leave to File Additional Supplemental Exhibits in Support of its Motion for Leave to File Amended Complaint

Finally, the plaintiff has filed two motions for leave to file additional exhibits regarding its motion to amend. The proposed supplemental exhibits, which were attached to the plaintiff's motions, include a change order request, meeting minutes and a superintendent's daily reports which document the extensive involvement of both Coull and Grinnell in the construction of the sprinkler system and are deemed necessary for the plaintiff to demonstrate factual support for its gross negligence claims. The motions will be allowed so that the evidence, which has already been submitted and considered, will be properly before the Court.

### ORDER

In accordance with the foregoing, the Court rules as follows:

Grinnell's Motion for Summary Judgment (Docket No. 25) is, with respect to a declaration that recovery under the Inspection Contract is subject to a valid limitation of liability clause, **ALLOWED**, but is, in all other respects, **DENIED;**

Coull's motion for summary judgment (Docket No. 28) is **DENIED;**

Lumbermens' cross-motions for a continuance pursuant to Fed.R.Civ.P. 56(f) (Docket Nos. 36 and 39) are **DENIED;**

Lumbermens' motion to amend the complaint (Docket No. 33) is **ALLOWED;** and

Lumbermens' motions for leave to file additional exhibits in support of its motion to amend the complaint (Docket Nos. 55 and 59) are **ALLOWED.**

**So ordered.**