**COPPER MOUNTAIN, INC.,**
**Plaintiff–Appellant,**

v.

**INDUSTRIAL SYSTEMS, INC. and**
**Amako Resort Construction (U.S.),**
**Inc., Defendants–Appellees.**

No. 06CA0560.

Colorado Court of Appeals,
Div. III.

Nov. 29, 2007.

Certiorari Granted June 9, 2009.

Jacobs Chase Frick Kleinkopf & Kelley, Mark D. Sullivan, Elizabeth L. Harris, Denver, Colorado, for Plaintiff–Appellant.

Montgomery Little Soran Murray & Kuhn, P.C., Daniel P. Murphy, Michael J. Decker, Greenwood Village, Colorado, for Defendant–Appellee Industrial Systems, Inc.

The Hustead Law Firm, P.C., Patrick Q. Hustead, Melissa W. Shisler, Paige K. Hogan, Denver, Colorado, for Defendant–Appellee Amako Resort Construction (U.S.), Inc.

Opinion by Judge FURMAN.

Plaintiff, Copper Mountain, Inc., appeals the district court's entry of summary judgment in favor of defendants, Amako Resort Construction (U.S.), Inc., and Industrial Systems, Inc. We affirm.

In this case, we are asked to determine whether an owner who entered into a standard American Institute of Architects (AIA) contract waived all claims for damages against the contractor and subcontractor to the extent those damages were covered by property insurance.

## I. Background

Copper hired Amako as a general contractor to renovate and expand the Union Creek Lodge at Copper Mountain Resort. Amako subcontracted with Industrial to build the steel framework for the expansion.

The parties signed standard AIA contracts. As pertinent here, AIA Document A201, General Conditions of the Contract for Construction, defined the work performed by Amako and Industrial as follows:

1.  1.3 THE WORK

    The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by [Amako] to fulfill [Amako]'s obligations. The Work may constitute the whole or a part of the Project. [Amako] shall provide [Copper] with the Work so that all components of the Work function together as contemplated by the Contract Documents.

Amako was responsible for the following obligations under the contract.

3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors (of all tiers) and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

11.1.1 The Contractor shall purchase ... and maintain ... such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such

operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be held liable:

. . .

11.1.1.5 claims for damages, other than to the Work itself, because of injury to or destruction of tangible property. . . .

Copper was to obtain property insurance to cover damages to the work as follows:

11.4.1 Unless otherwise provided, [Copper] shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the Initial Contract Sum, plus value of subsequent Contract modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles.

Copper did not purchase an "all risk" policy for the work. Instead, Copper relied on its all-purpose Ski Area Property Coverage (SAPC) insurance policy that provided insurance coverage for all of Copper Mountain, including the work and adjacent properties.

The contracts contained the following waiver provisions:

11.4.5 If during the Project construction period, [Copper] insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project . . . [Copper] shall waive all rights in accordance with the terms of Subparagraph 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise. . . .

11.4.7 Waivers of Subrogation. [Copper] and [Amako] waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other . . . for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work.

A fire occurred while Industrial was welding, damaging portions of the Union Creek Lodge. As a result, Copper sued Amako for negligence, negligent supervision, breach of contract, and indemnification, seeking approximately $1 million in damages. Amako and Industrial both asserted defenses based on the waiver of subrogation clause in the contract. All real and personal property damaged in the fire was covered under the SAPC insurance policy; Copper was responsible for its $1 million deductible, but was not suing on this basis.

Copper filed a motion for determination of a matter of law pursuant to C.R.C.P. 56(h), requesting the trial court determine the waiver provisions did not bar its claims for damages to the non-work portions of the Lodge destroyed by the fire. Amako and Industrial filed cross-motions for summary judgment, seeking a contrary ruling.

The trial court acknowledged a split among jurisdictions in construing the scope of waiver clauses that are similar to the clause in this case. The majority position, the court noted, does not distinguish between work and non-work, but instead interprets the waiver to bar all claims to damaged property to the extent covered by the owner's property insurance. The minority position distinguishes between work and non-work, limiting the scope of the waiver provision to claims for damages to the work.

The trial court determined that a division of the Colorado Court of Appeals adopted the minority rule in *Town of Silverton v. Phoenix Heat Source System, Inc.*, 948 P.2d 9 (Colo.App.1997). Although *Silverton's* holding was grounded on a work/non-work distinction, the trial court reasoned the appellate division could not have intended district courts conduct "time and energy intensive" inquiries to identify the work and non-work damaged property in each case, because such inquiry would subvert the waiver clause's purpose of promoting certainty as to the parties' liabilities.

Accordingly, after finding that Copper had elected to insure all of the damaged property

under its SAPC insurance policy, the district court determined that "Paragraph 11.4.5 acts to extend the Waiver of Subrogation (in Paragraph 11.4.7) to all portions of the Lodge and the work that are potentially covered by the SAPC." The court concluded that the waiver provision applied to all damages caused by the fire at or adjacent to the Lodge and granted the cross-motions for summary judgment in favor of Amako and Industrial.

On appeal, Copper challenges the trial court's summary judgment.

## II. Summary Judgment

Summary judgment is appropriate when the pleadings and supporting documents show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *W. Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002).

When the court is determining whether to grant a motion for summary judgment, "[t]he nonmoving party is entitled to the benefit of all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." *Id.* We review de novo the grant of a summary judgment motion. *Id.*

In challenging the district court's summary judgment, Copper raises three separate but related questions.

(1) Does *Silverton* limit the waiver of subrogation provision to claims for damages to the work?

(2) Did the contract's plain language limit the waiver of subrogation provision to the value of the work?

(3) Which damaged portions of Union Creek Lodge were work and which were non-work?

Because we answer the first two questions in favor of Amako and Industrial, we need not answer the third question.

## A. *Silverton*

Copper argues that *Silverton* limited the waiver of subrogation provision to claims for damages to the work. Thus, Copper argues it may pursue claims for damages to non-work portions of the Lodge. We disagree with the division in *Silverton* and, therefore, disagree with Copper.

In *Silverton,* the town had hired a general contractor to install a new roof on the existing town hall. The general contractor subsequently hired a subcontractor to design, manufacture, and supply an electric snow melting system on the roof. 948 P.2d at 10. One year after completion of the project, the roof caught fire and damaged the town hall. *Id.* at 11. The division concluded that the waiver of subrogation clause in the standard AIA contract "placed defendants essentially in the position of co-insureds on the town's property insurance policy only with respect to damages to the work." *Id.* at 12. Because the work was spatially limited to the roof, the waiver of subrogation between the parties was likewise limited. *Id.* Therefore, the division held the waiver inapplicable to damages sustained to any non-roof related portions of the town hall. *Id.*

*Silverton* represents a minority view, however, and most courts have concluded the waived claims are not defined by damages to the "work," but by the source of any insurance proceeds paying for the loss. *See Employers Mut. Cas. Co. v. A.C.C.T., Inc.,* 580 N.W.2d 490, 493 (Minn.1998) (extensive listing of citations); *Chadwick v. CSI, Ltd.,* 137 N.H. 515, 629 A.2d 820, 826–27 (1993); *see also Commercial Union Ins. Co. v. Bituminous Cas. Corp.,* 851 F.2d 98, 101 (3d Cir. 1988); *Tokio Marine & Fire Ins. Co. Ltd. v. Employers Ins.,* 786 F.2d 101, 105 (2d Cir. 1986); *ASIC II Ltd. v. Stonhard, Inc.,* 63 F.Supp.2d 85, 92–3 (D.Me.1999); *Lloyd's Underwriters v. Craig & Rush, Inc.,* 26 Cal. App.4th 1194, 32 Cal.Rptr.2d 144, 148 (1994); *Haemonetics Corp. v. Brophy & Phillips Co.,* 23 Mass.App.Ct. 254, 501 N.E.2d 524, 526 (1986). We agree with the reasoning of these courts, and disagree with *Silverton,* because the division did not address the significance of the plain language of the waiver clause in the contract. We now turn to that language.

## B. The Contract's Plain Language

■ Copper contends the contract shows the parties intended to allocate responsibilities for losses among themselves, with Copper responsible for losses to the work and Amako and Industrial responsible for losses to non-work. Thus, Copper claims the waiver clause waived claims only to the extent they fell under its area of responsibility, that is, loss for the work, and that losses outside the work would remain the responsibility of Amako and Industrial. We disagree.

■ As to interpreting contracts, Colorado's law is well established. The primary goal is to determine and effectuate the parties' intent. *USI Properties E., Inc. v. Simpson,* 938 P.2d 168, 173 (Colo.1997). To ascertain the parties' intent, we first consider whether the contract language is ambiguous, construing the language according to its plain and generally accepted meaning. *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 256, 577 P.2d 748, 750 (1978). When determining whether contract language is ambiguous, we examine the entire contract rather than isolated clauses, and give meaning to each word. *U.S. Fid. & Guar. Co. v. Budget Rent–A–Car Sys., Inc.,* 842 P.2d 208, 213 (Colo.1992). Language that is plain and unambiguous expresses the parties' intent, and we must enforce such language according to its terms. *USI Properties,* 938 P.2d at 173.

■ We review de novo the unambiguous written language in a contract. *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371, 374 (Colo.1990).

Examining the entire contract, and the relationships among pertinent provisions, we conclude the waiver of subrogation provision unambiguously stated it was not limited to the loss for the work. Several reasons support this conclusion. First, the general waiver clause "waive[d] all rights against [contractors] ... for damages caused by fire ... *to the extent covered* by *insurance* obtained pursuant to this Paragraph 11.4 or other property insurance *applicable to the Work.*" (Emphasis added.) The emphasized language does not define waived claims by what property is harmed, that is, the work, but by the policy of insurance "applicable to the Work" that pays for the damage. *See Lloyd's Underwriters,* 32 Cal.Rptr.2d at 148.

Second, paragraph 11.4.1 of the contract states the requirements for obtaining property insurance that is applicable to the work. *"Unless otherwise provided,"* Copper was to purchase an " 'all risk' or equivalent policy" to protect its, Amako's, and Industrial's interests in the work. Thus, Copper could have purchased an all-risk policy limited to the work to satisfy its obligations under the contract, or, as it chose to do, it could have relied on its existing SAPC policy. *See Employers Mut. Cas. Co.,* 580 N.W.2d at 493.

Third, other clauses in the contract show the parties intended to waive claims for damages beyond those defined by the work. Paragraph 11.4.5 provides that, if Copper insured property separate from the project that was located "at or adjacent to the site," claims for damages to that property would also be waived. *See Lloyd's Underwriters,* 32 Cal.Rptr.2d at 148 n. 5.

■ Hence, because Copper chose to rely on its existing SAPC policy, and under the contract that policy covered both work and other damaged areas, Copper waived the right to sue Amako and Industrial for damages caused by the fire. *See Employers Mut. Cas. Co.,* 580 N.W.2d at 493.

Although the trial court based its analysis on paragraph 11.4.5, which extends the waiver to insurance policies separate from that insuring the work, Copper stated in its C.R.C.P. 56(h) motion for determination of a matter of law that it satisfied its obligation to insure the work under an endorsement to its SAPC policy, and that this policy covered Union Creek Lodge. Thus, because the SAPC was the policy Copper relied on to insure the work, and because that policy covered all the property damaged by the fire, we need not consider whether paragraph 11.4.5 applies.

Accordingly, although for different reasons, we conclude the trial court correctly determined that the waiver of subrogation clause applied to work and non-work portions of Union Creek Lodge, and correctly departed from the *Silverton* opinion. We further

conclude the district court did not err in granting summary judgment in favor of Amako and Industrial.

#### C. Which Damaged Portions of Union Creek Lodge Were Work and Which Were Non–Work?

Copper also contends the district court erred in not making findings as to which damaged portions of Union Creek Lodge constituted work and non-work, and in disregarding affidavits that raised a genuine issue of material fact on this point. Because we have concluded that the waiver of subrogation clause applied to work and non-work portions of Union Creek Lodge, we need not address this issue. *See Campbell v. Meyer,* 883 P.2d 617, 618 (Colo.App.1994).

The judgment is affirmed.

Judge ROY and Judge BERNARD concur.