NORTH AMERICAN SPECIALTY INSURANCE COMPANY *vs.*
PAYTON CONSTRUCTION CORPORATION & others.[1]

No. 09-P-1391.

Suffolk. November 8, 2010. - September 8, 2011.

Present: BERRY, SMITH, & GREEN, JJ.

*Insurance,* Subrogation, Waiver, "All risk" policy. *Contract,* Construction contract. *Subrogation.*

This court held that the failure of a general contractor to obtain, as required
under the American Institute of Architects standard form contract (AIA
contract) between the contractor and the owner of a home damaged by fire
during renovation, a waiver of subrogation rights from a subcontractor did
not invalidate (i.e., constitute a material breach of) or render unenforceable
the subrogation waiver provision of the AIA contract. [368-371]

CIVIL ACTION commenced in the Superior Court Department on
March 14, 2005.

Motions for summary judgment were heard by *D. Lloyd Mac-
donald,* J., a motion for summary judgment was heard by *Merita
A. Hopkins,* J., and entry of final judgment was ordered by
*Linda E. Giles,* J.

*John Donovan, III,* for the plaintiff.

*Grace V.B. Garcia* for Payton Construction Corporation &
another.

*Jon A. Halaby* for D.J. Plumbing and Heating, Inc.

BERRY, J. The plaintiff insurer, North American Specialty
Insurance Company (North American), paid $1.2 million under
an all risk policy issued to Nautical Resources Nominee Trust,
the owner of a guest house (owner) that caught fire while being
renovated. North American, as subrogee to the owner, then filed
suit in Superior Court against the general contractor, Payton Con-
struction Corporation (Payton), and the subcontractors, Nardone

---

[1]Nardone Electrical Corporation and D.J. Plumbing and Heating, Inc.

Electrical Corporation (Nardone) and D.J. Plumbing and Heating, Inc. (D.J.). In two separate proceedings, the defendants' summary judgment motions were allowed against North American.[2]

The essential basis for the entry of summary judgments in favor of the respective defendants was a determination that North American had no right to seek damages in subrogation against the three defendant contractors because of a waiver of subrogation rights clause in the American Institute of Architects standard form contract, adopting by reference the "General Conditions of the Contract for Construction" (AIA Contract*).* The AIA contract was signed by the owner and the general contractor Payton. Under the AIA contract, the subcontractors were also required to sign subrogation waivers. Payton had the subcontractor Nardone sign a contract that contained the required subrogation waiver clause. However, for reasons not explained in the record, the subcontractor D.J. did not agree to the subrogation waiver, which was crossed out in the contract between D.J. and Payton.

*Discussion.* The waiver of subrogation clause in the AIA contract provides as follows:

> "*The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and* (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Paragraph 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. *The Owner or Contractor, as appropriate, shall require* of the Architect, Architect's consultants, *separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for*

---

[2]Summary judgment motions filed by Payton and Nardone were allowed together in 2006; D.J.'s summary judgment motion was allowed in 2007 by a different judge. Final judgment in favor of all the defendants was entered in 2009.

*validity, similar waivers each in favor of other parties enumerated herein.* The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged."

(Emphasis added).

Absent the subrogation waiver, North American, as subrogee, would stand in the shoes of the insured owner. That is, since North American paid the owner on the insured claims, as the subrogated insurer, North American not only would succeed to any rights of action the owner may have against the parties responsible for the loss, but also would be subject to any defenses that would bar the owner's rights of action. Here, in respect to the fire, the responsible parties were alleged to have been the general contractor Payton and the subcontractors D.J. and Nardone. Thus, North American stands as the owner in respect to claims against and defenses by these defendants. See *Liberty Mut. Ins. Co.* v. *National Consol. Warehouses, Inc.*, 34 Mass. App. Ct. 293, 296-297 (1993).

A waiver of subrogation would, in effect, extinguish any rights of action by North American because there would be a full defense barring the complaint, in that North American would be bound by the owner's subrogation waiver. However, in this appeal, as in the proceedings below, North American contends that the owner's subrogation waiver was unenforceable because Payton did not obtain the required waiver from D.J. This omission, North American submits, was a material breach of the AIA contract rendering the entire subrogation waiver void. Therefore, North American asserts, the defendants are not protected and may not take advantage of the subrogation waiver. North American's contention regarding a material breach was rejected by the Superior Court judges.

We would note, as did the Superior Court judges, that Massachusetts appellate courts have not directly addressed the issue of whether failure to obtain a waiver of subrogation from a

subcontractor is a material breach of the waiver of a subrogation clause in general contractual conditions, such as are set forth in the AIA contract between the owner and the general contractor in this case.[3]

However, courts in both Vermont and Connecticut have reached this precise issue and have held that such a failure is not a material breach barring enforcement of the waiver of subrogation. See *Behr* v. *Hook*, 173 Vt. 122, 130-131 (2001); *Best Friends Pet Care, Inc.* v. *Design Learned, Inc.*, 77 Conn. App. 167, 179-180 (2003). We agree with the Superior Court judges that the reasoning in *Behr* and *Best Friends Pet Care, Inc.*, is persuasive. Indeed, the exact same waiver subrogation clause presented here was at issue in *Behr*, and the *Behr* court held as follows:

> "According to plaintiffs, by not obtaining waivers from defendants, the general contractor materially breached the contract, thereby preventing defendants from enforcing the waiver-of-subrogation provision.

> "We do not find this argument persuasive. . . . In any event, the contract does not make obtaining the waivers from subcontractors a condition precedent to application of the waiver-of-subrogation provision. Indeed, rather than specify any consequences to follow from failure to obtain waivers from the subcontractors, the contract provides that a 'waiver of subrogation shall be effective' even against those persons or entities that 'would otherwise have a duty of indemnification' or 'did not pay the insurance premium directly or indirectly.'

> "The plain intent of the parties was to make the Behrs' insurer bear the risk of property damage resulting from fire or other perils. Because the waiver-of-subrogation provision required that the waiver be recognized in the

---

[3]North American's argument that there was a material breach is based on the theoretical possibility that, because the subcontractor D.J. failed to sign the subrogation waiver, the owner was exposed to potential liability from D.J. But the record demonstrates no such liability, either actual or threatened. Given that lack of exposure, to the extent that Payton's failure to get the waiver signed by D.J. was a breach, it appears to be an immaterial breach, not rising to the level of rendering the subrogation unenforceable.

insurance policy, the insurer knew the risk when it insured plaintiffs and presumably set the rates based on that risk. The absence of mutual waivers with respect to the subcontractors was not a material breach affecting the primary purpose of the provision, which was to protect the contractor and its subcontractors from liability for accidental property loss."

*Behr*, 173 Vt. at 130-131.

We adopt the rationale so formulated in *Behr*. This rationale is consistent with this court's analysis in a related context. Specifically, *Haemonetics Corp. v. Brophy & Phillips Co.*, 23 Mass. App. Ct. 254, 258 (1986), speaks to the utility of subrogation waivers in construction contracts to ensure cost effectiveness and judicial economy. To this end, in *Haemonetics Corp.*, this court held that "[a] waiver of subrogation is useful in such projects because it avoids disruption and disputes among the parties to the project. It thus eliminates the need for lawsuits, and yet protects the contracting parties from loss by bringing all property damage under the all risks builder's property insurance." *Ibid.*, quoting from *Tokio Marine & Fire Ins. Co. v. Employers Ins.*, 786 F.2d 101, 104 (2d Cir. 1986).

In conclusion, we hold that the failure of a general contractor to obtain a waiver from a subcontractor under the AIA contract, in circumstances such as presented here, does not invalidate the subrogation waiver, nor does it render it unenforceable. In short, the insurer, North American, is bound by the subrogation waiver set forth in the AIA contract at issue.

*Judgment affirmed.*